IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

XUN ENERGY, INC.,

        Plaintiff,

    vs.

LEA KENNEDY, *an individual*, d/b/a
LUXEMBARINGS,

        Defendant.

Case No. 11-cv-983-JPG-DGW

**MEMORANDUM AND ORDER**

This matter comes before the Court on plaintiff Xun Energy, Inc.'s ("Xun Energy")

motion for summary judgment as to Counts One and Two of its complaint (Doc. 57). Defendant

Lea Kennedy ("Kennedy"), doing business as Luxembarings, filed a response to Xun Energy's

motion for summary judgment (Doc. 61) and a cross motion for summary judgment (Doc. 63).

Xun Energy responded to Kennedy's motion for summary judgment (Doc. 67) and filed a motion

to strike Michael Rosen's ("Rosen") affidavit filed by Kennedy in support of her response to

Xun Energy's motion for summary judgment (Doc. 66). Thereafter, Kennedy responded to Xun

Energy's motion to strike (Doc. 68) and replied to Xun Energy's response to her motion for

summary judgment (Doc. 69). For the following reasons, the Court grants in part and denies in

part Xun Energy's motion for summary judgment, grants in part and denies in part Xun Energy's

motion to strike, and denies Kennedy's motion for summary judgment.

    1. **Facts**

        Ingrid Guibert, whom Rosen had introduced to Kennedy, contacted Trader Group

International Holdings, Inc. ("TGI") for the purpose of finding an investment for Kennedy. TGI

gave Guibert Xun Energy's executive summary for Kennedy's consideration. Thereafter,

Guibert contacted Jerry Mikolajczyk, the president and CEO of Xun Energy, to inform him that

Kennedy had $10,000,000 to invest.  Kennedy and Xun Energy proceeded to engage in

discussions concerning Kennedy's purchase of a specified amount of Xun Energy's stock.  As a

result of those discussions, the parties entered into (1) an escrow agreement on May 8, 2001,

whereby Xun Energy placed $25,000 in an escrow account for Kennedy's benefit; and (2) an

offer to purchase agreement, drafted by Kennedy, on May 10, 2011, whereby Kennedy agreed to

purchase ten million dollars' worth of Xun Energy's common stock voting shares.  The terms of

the agreement were unambiguous such that both parties fully understood the agreement.

The agreement provided that Kennedy could purchase the stock in increments; however,

the entire transaction was to be completed by June 24, 2011.  Kennedy failed to tender the

purchase price by the deadline, and Xun Energy agreed to extend the deadline until July 1, 2011.

Again, Kennedy failed to meet the deadline and then unilaterally extended the deadline to July

20, 2011.  After Kennedy still failed to meet her obligation, Xun Energy sent her a letter

notifying her of her default and giving her seven days to cure.  To date, Kennedy has yet to

tender the agreed upon purchase price to Xun Energy and admits she is in breach of their

agreement.

On November 4, 2011, Xun Energy filed a three-count complaint against Kennedy

alleging breach of contract, promissory estoppel, and fraud in the inducement.  Xun Energy filed

the instant motion to for summary judgment arguing it is entitled to (1) judgment as matter of

law on the breach of contract and promissory estoppel counts; and (2) damages in the amount of

$10,000,000 plus interest and costs.

Kennedy responded arguing Xun Energy did not suffer damages and did not reasonably

believe Kennedy was an accredited investor.  Further, she argues the contract is invalid due to

fraud and Xun Energy's concealment of a consulting agreement.  In support of her response,

Kennedy offers Rosen's affidavit (Doc. 62-1) in which he alleges Guibert knew that Kennedy

was not capable of complying with the terms of the contract.  Kennedy's cross motion for

summary judgment (Doc. 63) argues she is entitled to judgment as a matter of law because Xun

Energy did not suffer a loss.  The Court will now turn to consider the aforementioned motions.

## 2.  Rosen's Affidavit

As an initial matter, the Court will consider Xun Energy's motion to strike Rosen's

affidavit (Doc. 62-1) submitted in support of Kennedy's response to Xun Energy's motion for

summary judgment.  Pursuant to Federal Rule of Civil Procedure 56(c)(4) an affidavit "used to

support or oppose a motion must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant [] is competent to testify on the matters stated."

A court cannot consider parts of an affidavit that fail to satisfy the aforementioned Rule.

*Adusumilli v. City of Chicago*, 164 F.3d 353, 359 (7th Cir. 1998).

Paragraphs One and Two simply list Rosen's identifying information and that he has

personal knowledge of the recited facts.  Paragraph Three indicates Rosen introduced Kennedy

and Guibert, and thus states facts based on Rosen's personal knowledge that would be admissible

in evidence.  Paragraph Four indicates Rosen was "witness to several phone conversations"

between Kennedy and Guibert, and "can confirm Lea Kennedy made it patently clear what her

abilities and limitations were regarding the transaction which was limited to a successful

business transaction in Europe."  Doc. 62-1, p. 2.  In this paragraph, Rosen testifies to his own

personal firsthand knowledge of conversations to which he was a party.  Accordingly, the Court

will not strike Paragraphs One through Four of Rosen's affidavit and denies Xun Energy's

motion to strike to that extent.

In Paragraphs Five, Six, and Seven of the affidavit, Rosen attests to Guibert's knowledge of Kennedy's ability to complete the transaction.  Paragraph Five states "Ingrid Guibert was aware that Lea Kennedy was not personally capable of investing ten million dollars ($10,000,000).  To my knowledge, Lea did not fill out any Accredited investor paperwork." *Id*. Paragraph Six declares that

> Ingrid Guibert knew that in order for Lea Kennedy to purchase stock in any dollar amount that it was dependent on Lea Kennedy travelling and closing a business deal overseas.  To my knowledge, no transaction ever culminated from that day to this thus resulting in the ability to conclude the Xun transaction.

*Id*.  Paragraph Seven declares that "Ingrid Guibert was aware that Lea Kennedy needed to borrow expense money to fund the business trip to Europe from a third party." *Id*.  To the extent these paragraphs purport to express Guibert's knowledge, they are conclusory, speculative, and do not state the basis for Rosen's alleged personal knowledge.  Accordingly, the Court grants Xun Energy's motion to strike to the extent it seeks to strike Paragraphs Five, Six, and Seven of Rosen's affidavit.

> Paragraph Eight, the final paragraph, states Rosen was
>
> unaware of Lea Kennedy representing to Ingrid Guibert or anyone at Xun Energy, Inc. that she personally had any monies to purchase stock or was a wealthy accredited investor.  My understanding was that Lea Kennedy did not feel comfortable executing the Subscription Agreement even though Xun Energy was pressuring her to execute it before their quarterlies were due unless her funding was fully available to purchase the stock.

Doc. 62-1, p. 2.  The Court strikes the second sentence of Paragraph Eight to the extent it testifies to Kennedy's feelings about executing the agreement.  Again, Rosen's statement is conclusory, speculative, and he fails to state the basis of his personal knowledge.  Now, the Court will turn to consider whether Xun Energy is entitled to judgment as a matter of law.

4

### 2. Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).  The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.  Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion.  *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).  A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

### a. Breach of Contract

First, Xun Energy contends that it must prevail under a breach of contract theory because Kennedy has admitted to the essential elements for breach of contract.  Under Illinois law, a

plaintiff must establish the following elements for a breach of contract claim: "(1) the existence

of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by

the defendant; and (4) resultant damages."  *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759,

764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960,

967 (Ill. App. Ct. 2004)).

Kennedy admitted in her answer that a contract exists, Xun Energy substantially

performed when it transferred money into an escrow account, and Kennedy breached the contract

when she failed to pay the agreed upon purchase price for the shares.  In her response to Xun

Energy's motion for summary judgment, Kennedy only disputes damages, contending that "Xun

Energy never incurred a loss because they still have their shares."  Doc. 61, p. 2.  Further, she

explains "[Xun Energy] is asking this Court to assume the transfer of shares already took place

and that Xun Energy was not paid for those shares and that they have a loss to recover as a result

of [Kennedy]'s failure to purchase said shares."  *Id*.

In *Osgood v. Skinner*, the Illinois Supreme Court rejected an argument similar to

Kennedy's argument and found that a seller of stock need not deliver the certificates to recover

damages.  71 N.E. 869, 873 (Ill. 1904).  In considering the appropriate damages in a case where

the buyer had breached a contract to purchase stock, the Illinois Supreme Court explained in

pertinent part as follows:

> We do not think that an actual delivery of the certificates, or an acceptance of
> them by the defendant, was necessary to the recovery. . . . [T]here was no
> obligation to make such a delivery of the certificates without payment. . . . If there
> has been no delivery of personal property, the seller, who has offered performance
> on his part, may consider the property as the purchaser's, and may either sell it,
> and sue for the unpaid balance of the price, or may hold it subject to the call or
> order of the purchaser, and recover the whole price.  3 Parsons on Contracts (5th
> Ed. P. 209.  The difference between the contract price and the market value at the
> time and place of delivery is a proper measure of damages for a failure to receive
> personal property, and in very many cases the suits have been brought for such

> damages.  The seller often chooses to retain the title to the property, and recover the difference between the value and the contract price; but if the property remains in his hands, he is not obliged to consider it as his own.  The rule of this court has been that the vendor may elect to sue for damages, or to treat the property as the property of the vendee, notwithstanding refusal to accept it, and sue upon the contract for the whole contract price.

*Id.*  Accordingly, Kennedy, by her own admission, has breached a valid contract to purchase stock after Xun Energy substantially performed, and Xun Energy is entitled to recover damages.  It is for this reason that the Court denies Kennedy's motion for summary judgment (Doc. 63).  Xun Energy, however, has failed to show it is entitled to $10,000,000 in damages as a matter of law.  Accordingly, the Court denies Xun Energy's motion for summary judgment to the extent it seeks $10,000,000 in damages.  Now, the Court will turn to consider Xun Energy's motion with respect to Kennedy's affirmative defenses.

### b.  Affirmative Defenses

In her answer, Kennedy asserted seven affirmative defenses, alleging the contract violates (1) the Securities Act of 1933 because Kennedy was not an accredited investor; (2) the Securities Exchange Act of 1934 because Xun Energy contracted with Guibert, an unlicensed broker/dealer to sell the stock; (3) Rule 10b-5 of the Federal Exchange Act of 1934 because Xun Energy failed to provide Kennedy with a required pre-sale disclosure; (4) Illinois Securities Law of 1953 because defendant is not an accredited investor; (5) Illinois Securities Law of 1953 because Guibert was not a registered as a broker dealer in Illinois; (6) Illinois Securities Law of 1953 because Xun Energy failed to disclose material information to Kennedy; and (7) the Federal Exchange Act of 1934 and the Federal Securities Act of 1933 because Guibert failed to disclosed to Kennedy that she was acting on behalf of or under contract to Xun Energy.

Xun Energy addresses these affirmative defenses in turn in its motion for summary judgment.  In her response, Kennedy only argues that Xun Energy knew or should have known

that she was not an accredited investor.  She further argues that the contract is void because (1)

Guibert committed fraud by statements she made to Kennedy "to coerce [Kennedy] to keep the

deal alive by sending emails and letters to [Kennedy]", and by intentionally withholding

unidentified "information from [] Mikolajczyuk and Xun Energy [] about [Kennedy] so []

Guibert could try to make a deal happen"; and (2) Xun Energy concealed from Kennedy a

consulting agreement.  Doc. 61, pp. 3-4.  Now, the Court will consider Xun Energy's arguments

with respect to Kennedy's affirmative defenses.

### i.    Affirmative Defenses One and Four

First, Xun Energy argues it reasonably believed Kennedy was an accredited investor,

defeating Kennedy's first and fourth affirmative defenses.   Whether the sale of stock was

exempt from registration under both the Securities Act of 1933 and the Illinois Securities Law of

1953 turns on whether Kennedy was an "accredited investor" as defined under Regulation D of

the 1933 Securities Act, 17 C.F.R. § 230.501(a).  Regulation D lists eight categories and explains

that an "[a]ccredited investor shall mean any person who comes within any of [those eight]

categories, or who the issuer reasonably believes comes within any of [those eight] categories, at

the time of the sale of the securities . . . ."  17 C.F.R. § 230.501(a).  Of the eight categories, two

expressly concern the sale of securities to a "natural person" and provide that a "natural person"

is an accredited investor if her (1) "net worth . . . exceeds $1,000,000," or  (2) "individual

income [is] in excess of $200,000 in each of the two most recent years . . . and [she] has a

reasonable expectation of reaching the same income level in the current year."  17 C.F.R. §

230.501(a)(5) & (6).  Under Illinois law, "'[a]ccredited investor means an accredited investor as

defined in Rule 501(a) promulgated under the Securities Act of 1933."  215 ILCS 159/5.

Xun Energy contends that it reasonably believed Kennedy's net worth exceeded $1,000,000 and she was thus an accredited investor based on her representations to the company. Specifically, Xun Energy points to the fact that Kennedy approached Xun Energy with the offer to purchase $10,000,000 worth of stock.  In support of the proposition that Xun Energy believed that Kennedy was an accredited investor, Xun Energy also provides the affidavit of Mikolajczyk in which he attests that he believed Kennedy had $10,000,000 to invest, Kennedy had informed him that she had $300,000,000 in Panama and $500,000,000 in Turkey, and that Kennedy's biography and emails indicated she had the money and experience to be a "sophisticated investor."  Doc. 59.  To support the reasonableness of this belief, Xun Energy attaches the affidavit of Guibert in which she attests that she believed Kennedy had the funds to make the transaction and was a "sophisticated investor."  Doc.  58.  Further, Xun Energy attaches emails from Kennedy in which she states, "I work with accounts and clients all over the world," and explaining that she is in the process of transferring funds to New York from funds "parked in Euros in London."  Doc. 59-11.  Kennedy also provided to Xun Energy a copy of a contract between herself and Buyer Group International, Inc., in which she purportedly engaged in a transaction worth $10,000,000.  (Docs. 59-4 & 59-5).

In response, Kennedy fails to provide any evidence to refute Xun Energy's contention that it reasonably believed Kennedy was an accredited investor.  She simply provides Rosen's affidavit in which he attests that Kennedy made it clear to *Guibert* that her ability to complete this transaction was limited to a successful business transaction in Europe.  Doc. 62-1, p. 2.  The contract to purchase stock, however, was not between Kennedy and Guibert, it was between Kennedy and Xun Energy.  Kennedy provides no evidence that Guibert was Xun Energy's agent. To the contrary, it appears that Guibert worked on behalf of Kennedy.  Kennedy's further

9

presentation of *alleged* factual disputes without any evidentiary support with regard to Xun

Energy's reasonable belief of Kennedy's accredited investor status is not sufficient to survive

Xun Energy's motion for summary judgment. Accordingly, based on the evidence provided by

Xun Energy and the lack of evidence presented by Kennedy, no reasonable jury could conclude

that it was unreasonable for Xun Energy to believe that Kennedy had a net worth in excess of

$1,000,000. Thus, Xun Energy carried its burden in showing Kennedy would not prevail on

affirmative defenses one and four.

### ii.    Affirmative Defense Five

Xun Energy further argues that it did not violate the Illinois Securities Law of 1953

because Guibert was exempt from 815 ILCS 5/8 registration under one of the exemptions found

in 815 ILCS 5/4, demonstrating Kennedy could not prevail on affirmative defense five. The

Illinois Securities Law of 1953 provides that "every dealer, limited Canadian dealer, salesperson,

investment adviser, and investment adviser representative" must register with the state. 815

ILCS 5/8. However, "[n]o dealer or salesperson need be registered as such when offering or

selling securities in transaction as exempted by subsection A, B, C, D, E, G, H, I, J, K, M, O, P,

Q, R or S of section 4 of this Act . . . ." *Id*. Exemption H provides as follows:

> Any offer, sale or issuance of a security to (1) any natural person who has, or is
> reasonably believed by the person relying upon this subsection H to have, a net
> worth or joint net worth with that person's spouse, at the time of the offer, sale or
> issuance, in excess of $1,000,000 excluding the value of a principal residence . . .

815 ILCS 5/4. Accordingly, this test is the same test used to determine whether a natural person

qualifies as an accredited investor. This Court already determined that Xun Energy reasonably

believed Kennedy had a net worth in excess of $1,000,000. For the same reasons this Court

explained Kennedy was an accredited investor in Section 2(b)(i) of this order, this Court finds

Xun Energy has demonstrated Kennedy could not prevail on her fifth affirmative defense.

### iii.   **Affirmative Defenses Two and Seven**

Next, contrary to Kennedy's second and seventh affirmative defenses, Xun Energy

argues that it did not violate the Securities Exchange Act, the Federal Exchange Act of 1934, or

the Federal Securities Act of 1933 because Guibert was not its agent.  In affirmative defense two,

Kennedy asserted that the contract was void because Guibert was an unlicensed broker in

violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(a)(1).  In affirmative defense

seven, Kennedy asserted that Xun Energy failed to disclose to Kennedy that Guibert was Xun

Energy's agent in violation of the Federal Exchange Act of 1934 and the Federal Securities Act

of 1933.

In its motion for summary judgment, Xun Energy asserts that it did not contract with

Guibert to sell stock.  In support of this assertion it provides Guibert's affidavit in which she

attests that she has never been an employee, agent or broker for Xun Energy. (Doc. 58, p. 4).

Kennedy fails to provide any evidence to the contrary or even address this argument in her

response.  Accordingly, the Court finds Xun Energy carried its burden in demonstrating Kennedy

could not prevail on her second and seventh affirmative defenses.

### iv.   **Affirmative Defense Three**

Next, Xun Energy argues it did not violate Rule 10b-5 of the Securities Exchange Act of

1934, and thus Kennedy's third affirmative defense must fail.  Kennedy asserted the contract was

in violation of Rule 10b-5 of the Securities Exchange Act of 1934 because Xun Energy failed to

provide certain pre-sale disclosure information.  Specifically, Kennedy asserted Xun Energy

failed to provide a "private placement memorandum" pursuant to the Exchange Act of 1934.  In

its motion for summary judgment, Xun Energy provides Mikolajczyk's affidavit attesting that

Xun Energy sent Kennedy the following documents: (a) Xun Energy's financial statements, (b)

the 10-Q for the period ending February 28, 2011, and (c) the Super 8-K that Xun Energy filed

with the Securities and Exchange Commission on April 18, 2011.  Kennedy fails to refute the

fact that Xun Energy provided these documents or the sufficiency of these documents.  In fact,

Kennedy does not even address this argument in her response.  Accordingly, Xun Energy has

carried its burden in demonstrating Kennedy could not prevail on her third affirmative defense.

v.    **Affirmative Defense Six**

Kennedy's sixth affirmative defense asserts that the contract was in violation of the

Illinois Securities Law of 1953 because Xun Energy failed to disclose material information.

Kennedy, however, fails to allege what material information Xun Energy failed to disclose or

which section of 815 ILCS 5/12 she believes Xun Energy is in violation.  In her motion for

reconsideration of the denial of her motion to dismiss (Doc. 41), Kennedy elaborates that Xun

Energy violated 815 ILCS 5/12 in three ways: (1) the security was not registered in violation of

815 ILCS 5/12(a); (2) Xun Energy used an unlicensed dealer in violation of 815 ILCS 5/12(c);

and (3) Xun Energy did not deliver a prospectus to Kennedy in violation of 815 ILCS 5/12(b).

From this motion, the Court concludes that Kennedy's sixth affirmative defense alleging the

failure to disclose material information refers to a violation of 815 ILCS 5/12(b) because this is

the only argument Kennedy makes which refers to the failure to disclose information.

Title 815 ILCS 5/12(b) provides it is a violation of the Illinois Securities Law of 1953

"[t]o deliver to a purchaser any security required to be registered under Section 5, Section 6 or

Section 7 hereof unless accompanied or preceded by a prospectus that meets the requirements of

the pertinent subsection of Section 5 or Section 6."  In its motion for summary judgment, Xun

Energy argues that it was not required to register the proposed transaction because Kennedy

breached the agreement and thus a transaction never took place.  Kennedy does not take up this

argument in her response to Xun Energy's motion for summary judgment.  The Court agrees with Xun Energy that a plain reading of 815 ILCS 5/12(b) indicates it is not applicable to a proposed transaction.

In the alternative, Xun Energy contends that this transaction, if completed, would be exempt from registration under 815 ILCS 5/4.  Title 815 ILCS 5/4(H) provides that transactions to natural persons are exempt if the seller reasonably believes the buyer to have "a net worth or joint net worth with that person's spouse, at the time of the offer, sale or issuance, in excess of $1,000,000 excluding the value of a principal residence."  Accordingly, for the same reasons this Court found it was reasonable for Xun Energy to believe Kennedy's net worth was in excess of $1,000,000 for purposes of finding Kennedy was an accredited investor, this Court agrees with Xun Energy that 815 ILCS 5/4(H) would exempt this transaction.  Accordingly, because the transaction was never completed and Xun Energy qualifies for an exemption to registration, Xun Energy has carried its burden in demonstrating Kennedy could not prevail on her sixth affirmative defense.

### c.  Promissory Estoppel

Finally, Xun Energy moves for summary judgment on its promissory estoppel claim. However, because Kennedy concedes the existence of a valid contract, the Court need not examine Xun Energy's promissory estoppel claim because Xun Energy cannot recover under both a breach of contract and promissory estoppel claim.  *See Doyle v. Holy Cross Hosp.*, 708 N.E.2d 1140, 1148 (Ill. 1999) (once an enforceable contract is established, a party may not recover under promissory estoppel); *see also Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 524 (Ill. 2009).  Accordingly, the Court denies Xun Energy's motion for summary judgment with respect to its promissory estoppel claim.

### 3.   Kennedy's Newly-Raised Defenses

For the first time in her response to Xun Energy's motion for summary judgment,

Kennedy alleges the contract was illegal because (1) Guibert fraudulently "coerce[d] [Kennedy]

to keep the deal alive by sending emails and letters to [Xun Energy]"; (2) Guibert intentionally

withheld unidentified information from Xun Energy; and (3) "[Xun Energy] concealed from

[Kennedy] the existence of any consulting agreement."  Doc. 61, p. 3-4.  However, the failure to

raise an affirmative defense in a responsive pleading constitutes a waiver of that defense.  *See*

Fed. R. Civ. P. 8(c); *see, e.g., Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 235 (7th Cir.

1991); *MCI Telecomms. Corp. v. Ameri-Tel, Inc.*, 852 F. Supp. 659 (N.D. Ill. 1994).

Accordingly, the Court need not consider Kennedy's illegality defenses raised for the first time

in her response to Xun Energy's motion for summary judgment.

### 4.   Conclusion

For the foregoing reasons, the Court

- **GRANTS in part and DENIES in part** Xun Energy's motion to strike Rosen's

  affidavit (Doc. 66) and **STRIKES** Paragraphs Five, Six, and Seven of Rosen's

  affidavit (Doc. 62-1);

- **DENIES** Kennedy's motion for summary judgment (Doc. 63);

- **GRANTS in part and DENIES in part** Xun Energy's motion for summary

  judgment (Doc. 57) in that it (1) grants summary judgment on Xun Energy's breach

  of contract claim; (2) denies summary judgment on the amount of damages for its

  breach of contract claim; and (3) denies summary judgment on Xun Energy's

  promissory estoppel claim; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of this case.

The amount of damages remains an issue to be resolved in this case.  Further, Xun Energy's

fraud in the inducement claim alleged in Count Three of its complaint remains pending.

  **IT IS SO ORDERED**.

  **DATE:**  March 22, 2013

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
